Bank of N.Y. Mellon v Del Rio (2024 NY Slip Op 06293)

Bank of N.Y. Mellon v Del Rio

2024 NY Slip Op 06293

Decided on December 17, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 17, 2024

Before: Manzanet-Daniels, J.P., Webber, Moulton, Rodriguez, Rosado, JJ. 

Index No. 36469/19 Appeal No. 3262 Case No. 2023-03505 

[*1]Bank of New York Mellon Formerly Known as The Bank of New York, etc., Plaintiff-Appellant,
v
Alfred Del Rio Also Known as Alfredo Del Rio, et al., Defendants-Respondents. New York State Office of the Attorney General, Intervenor-Respondent, Mortgage Electronic Registration Systems Inc., etc, et al., Defendants.

Akerman LLP, New York (Jordan M. Smith of counsel), for appellant.
Shiryak Bowman Anderson Gill & Kadochnikov LLP, Kew Gardens (Matthew J. Routh of counsel), for Alfred Del Rio and Olivia Del Rio, respondents.
Letitia James, Attorney General, New York (Mark S. Grube of counsel), for New York State Office of the Attorney General, respondent.

Order, Supreme Court, Bronx County (Doris M. Gonzalez, J.), entered on or about June 28, 2023, which, to the extent appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.
Defendants are not judicially estopped from challenging plaintiff's foreclosure claim based on defendants having checked a box as part of a 2011 bankruptcy petition in which they stated that the real property plaintiff now seeks to foreclose upon will be "Surrendered." The statement did not clearly and unequivocally take a legal position so as to estop them from taking a different position following the commencement of this foreclosure action eight years later. Even if defendants did take a position during the bankruptcy proceeding that was contrary to their position in this action, the position in this action does not appear to have been "simply because [defendants'] interests have changed" (Baje Realty Corp. v Cutler, 32 AD3d 307, 310 [1st Dept 2006] [internal quotation marks omitted]), but, instead, due to the substantial passage of time, during which time plaintiff discontinued an earlier 2009 foreclosure action and did not commence this one until four years after the parties' 2015 stipulation of discontinuance.
Res judicata does not bar defendants' statute of limitations defense in this action. Nothing in the record indicates that the prior "action" — namely the 2011 bankruptcy proceeding — involved litigation of any cause of action here so as to trigger the doctrine (see Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347 [1999]).
Plaintiff accelerated its loan via its amended complaint on October 23, 2009, when it identified the correct plaintiff, defendants, loan, mortgage, and mortgaged premises, and the complaint stated that "the plaintiff has elected and does hereby elect to declare the entire principal balance to be due and owing." Collectively, these constituted an unequivocal overt act accelerating the loan (see Freedom Mtge. Corp. v Engel, 37 NY3d 1, 22 [2021], superseded by statute on other grounds; see also Wells Fargo Bank, N.A. v Yoo Mi Min, 202 AD3d 645, 645 [1st Dept 2022).
The parties' 2015 stipulation of discontinuance did not reset the statute of limitations. The stipulation was silent as to whether the parties reset the statute of limitations (see General Obligations Law § 17-105[1]), and the discontinuance itself did not reset the limitation period (CPLR 3217[e]).
Plaintiff's argument that the Foreclosure Abuse Prevention Act (L 2022, ch 821 [FAPA]), which amended CPLR 3217 to include subsection (e), was not intended to apply retroactively is unavailing (see Bayview Loan Servicing, LLC v Dalal, AD3d , 2024 NY Slip Op 05767 [1st Dept 2024]; Genovese v Nationstar Mtge. LLC, 223 AD3d 37, 44 [1st Dept 2023]). As this Court noted in Genovese, FAPA was "remedial," and the Legislature "evince[d] a sense of urgency" (223 AD37 at 45). This Court further [*2]noted that "FAPA was designed, in part, to rewrite unintended judicial interpretations" (id.). In addition, FAPA sought to "clarify and reaffirm the legislative intent of a wide spectrum of laws" that lenders had "manipulated and abused" (Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 821). The Senate Sponsor's Memo stated that CPLR 3217(e) "clarifies that . . . the mere voluntary dismissal or discontinuance of a foreclosure action" will not "revive[] or reset" the limitation period. In light of the Legislature's intent to provide an immediate corrective to "unintended judicial interpretations" and the Legislature's specific targeting of discontinuances, it would seem incongruous for the Legislature, in enacting CPLR 3217(e), to have allowed discontinuances that occurred before FAPA was enacted to be exempt from that subsection's reach.
Applying FAPA retroactively in this case does not violate due process. FAPA sought to prevent abusive foreclosure practices through the unilateral manipulation of the statute of limitations and preventing successive lawsuits (see Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 821). The Legislature noted that, were the law to allow lenders to unilaterally reset the statute of limitations, many foreclosure cases could proceed ad infinitum (id.). It also found that "[n]o other civil plaintiff in this state is extended such unilateral and unfettered powers" (id.). Thus, the Legislature's purpose in enacting FAPA aligned with the purpose of statutes of limitations generally, which is to "giv[e] repose to human affairs" (id.). Collectively, these constitute a "legitimate legislative purpose" (American Economy Ins. Co. v State of New York, 30 NY3d 136, 157-158 [2017], cert denied 584 US 1013 [2018] [internal quotation marks omitted]). In addition, CPLR 3217(e), as is relevant here, provides that "the voluntary discontinuance" of a foreclosure action" "on . . . stipulation . . . shall not, in form or effect . . . revive or reset the limitations period" (CPLR 3217[e]). This directly addresses the Legislature's desire to prevent lenders and servicers from manipulating the limitation period through discontinuances. Thus, CPLR 3217(e) furthers the legitimate legislative purpose by rational means (see American Economy Ins. Co. at 157).
Applying FAPA retroactively here also would not undermine plaintiff's settled expectations. Even if plaintiff had a right to deaccelerate defendants' loan in 2015, the 2015 stipulation of discontinuance's silence concerning deceleration meant that plaintiff did not unequivocally take advantage of that right. In addition, since the Court of Appeals had never addressed the effect of a discontinuance on a loan accelerated by the filing of a complaint prior to its decision in Freedom Mtge. Corp. v Engel (37 NY3d 1), plaintiff could not rely on the discontinuance to effect a deacceleration (id. at 28), and instead "took [its] chances with [its] interpretation of the law" ([*3]General Motors Corp. v Romein, 503 US 181, 192 [1992]).
FAPA did not effect a "regulatory" taking because FAPA did not "permanently deprive[]" plaintiff's mortgage of all value (Tahoe-Sierra Preserv. Council, Inc. v Tahoe Regional Planning Agency, 535 US 302, 332 [2002]). To the extent that anything deprived plaintiff's mortgage of value, it was the six-year statute of limitations itself, which began to accrue in 2009 when plaintiff accelerated defendants' loan.
Applying FAPA here would also not violate the United States Constitution's
Contract Clause, as plaintiff points to no contractual provision allowing it to de-
accelerate its loan, let alone a provision allowing it to reset the statute of limitations.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 17, 2024